IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WAL-MART STORES, INC.,

    Plaintiff,

v.

CASE-MATE, INC.,

    Defendant.

Civil Action No.: 16-5215 TLB

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Wal-Mart Stores, Inc. ("Walmart") files this complaint for declaratory judgment against defendant Case-Mate, Inc. ("Defendant"), and in support thereof alleges as follows:

### NATURE OF THE ACTION

1. Walmart seeks a declaratory judgment that its use of the trademark CASEMATE in connection with stationery products is not likely to cause confusion with Defendant's use of the trademark CASE-MATE in connection with high-end, fashion-forward mobile device cases and accessories.

2. Not surprisingly, the term "case" is commonly used and registered in trademarks owned by many other companies in the mobile device case industry, and, upon information and belief, Defendant has never asserted its CASE-MATE trademark against any such company in the past. In addition, other companies use the exact trademark CASEMATE in connection with non-competing products and services, and, upon information and belief, Defendant has never asserted the CASE-MATE trademark against those companies either.

3. The stationery products offered by Walmart in connection with its CASEMATE trademark are unrelated to the mobile device cases and accessories offered by Defendant, and the parties' advertising is so different, and is directed toward such different categories of consumers, that consumers will not be confused by the presence of both trademarks in the marketplace.

4. Upon information and belief, the Examining Attorney with the United States Patent and Trademark Office who analyzed Walmart's trademark application considered whether Walmart's CASEMATE trademark for stationery products was confusingly similar to Defendant's CASE-MATE trademark for mobile device cases, and determined that there was no likelihood of confusion sufficient to prevent Walmart's trademark application from proceeding to registration.

5. Despite the fact that both Walmart and Defendant have offered their respective products under their respective trademarks for more than two years, Walmart is not aware of any individuals who have purchased either party's products because they were confused regarding the source of the products.

6. Notwithstanding the fact that, upon information and belief, Defendant has never before sought to prevent other companies from using similar trademarks on unrelated products, Defendant has filed an Opposition Proceeding in the Trademark Trial and Appeal Board ("TTAB"), seeking to prevent Walmart's CASEMATE trademark from becoming registered.

7. Even though the TTAB's jurisdiction extends only to determining whether Walmart's trademark is entitled to registration (i.e., the TTAB does not have the jurisdiction to determine whether the use of a trademark constitutes infringement, or whether monetary damages are appropriate), Defendant has demanded an accounting of Walmart's revenues and profits from the sale of Walmart's CASEMATE-branded stationery products, and has

specifically threatened to file an action in federal district court—where it can pursue monetary damages.

8. Upon information and belief, Defendant is pursuing this matter not because of a legitimate fear of confusion, but because it views Walmart as a "deep pocket" from which it can seek a significant amount of money in settlement of this matter.

9. Because of Defendant's threats, and because Walmart's CASEMATE trademark is not likely to cause confusion with Defendant's CASE-MATE trademark, Walmart seeks a declaratory judgment of non-infringement.

## PARTIES

10. Walmart is a corporation organized under the laws of Delaware with a principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.

11. Upon information and belief, Defendant is a corporation organized under the laws of Georgia with a principal place of business at 2048 Weems Road, Tucker, Georgia 30084.

## JURISDICTION AND VENUE

12. This action arises and is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaration of the rights and/or other legal relations of the parties to this litigation with respect to an actual controversy arising under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.* Thus, the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201.

13. This Court has personal jurisdiction over Defendant as Defendant does continuous and systematic business in Arkansas and this District. *See* Ark. Code Ann. § 16-4-101.

14. Venue is proper in the district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred in this District and have caused damage to Walmart in this District.

## FACTS

### Defendant's Use of CASE-MATE for Fashion-Forward Mobile Device Cases

15. Since 2006, Defendant has designed, distributed, and sold what it advertises as "fashion-forward" protective cases for cell phones and other electronic devices in connection with its CASE-MATE trademark. Defendant's products include mobile device cases, as well as screen protectors, "smart-watch" bands, and mobile chargers.

16. The images below depict two of Defendant's products available for sale on its website—(i) a rose gold cell phone case that Defendant offers for sale for $80.00; and (ii) a genuine crystal and leather "brilliance band" for an Apple watch that Defendant offers for sale for $80.00.

 

Printouts from Defendant's website containing these images are attached as Exhibit 1.

17. Defendant owns a federal registration for the CASE-MATE trademark in connection with "carrying cases for personal electronic devices" in International Class 9 (U.S. Reg. No. 3,246,753).

18. Defendant does not offer for sale any stationery products, such as legal pads, filler paper, composition books, folders, binders, pens, highlighters, markers, pencils, paper clips, or push pins.

19. Upon information and belief, Defendant does not have any plans to expand its product offerings to include stationery products, such as legal pads, filler paper, composition books, folders, binders, pens, highlighters, markers, pencils, paper clips, or push pins.

20. Defendant sells its products directly through its website, as well as through wireless carriers such as AT&T, Verizon, and Sprint, and in the electronics departments of retail stores, such as Bloomingdales, Nordstrom, Macy's, Target, Walmart, and Best Buy.

21. Upon information and belief, Defendant does not sell its products in the stationery departments of retail stores.

22. Defendant is focused on selling fashion-forward mobile device cases and accessories, and describes itself as a company "Where Fashion and Style meet Technology," and targets its advertising and the use of its CASEMATE mark toward a clear, fashion-forward segment of consumers.

23. For example, Defendant's target customers include trendsetters who are seeking unique and distinctive (and in some cases, high-end) mobile device cases.

24. The following is an excerpt from Defendant's website, revealing that Defendant is seeking out trendsetting brand ambassadors to help market its CASE-MATE brand.



A printout from Defendant's website containing this image is attached as Exhibit 2.

25.  Consistent with its fashion-conscious brand image, Defendant has partnered with designer Rebecca Minkoff to offer a variety of accessories for use in connection with electronic devices—such as cell phone cases, crossbody bags, wristlets, gold-studded mobile chargers, and notification bracelets.  For example, Defendant sells a fringe "crossbody" purse (originally listed for $100.00) and a gold link notification bracelet (originally listed for $80.00), both depicted in the images below, on its website.




Printouts from Defendant's website containing these images are attached as Exhibit 3.

26. Consistent with Defendant's focus on designing cases that appeal to fashion-conscious customers, Defendant publicizes the fact that celebrities have been photographed using Defendant's CASE-MATE-branded cases, including Fergie, Lucy Hale (of Pretty Little Liars), and Selena Gomez.



Printouts from various websites containing these images are attached as Exhibit 4.

### Third-Party Uses of CASE in Trademarks for Mobile Device Cases

27. Not surprisingly, Defendant is not the only company that uses the term CASE as part of a trademark for the design, distribution, and sale of mobile device cases and related accessories.

28. Many companies use, and have even registered, trademarks that contain the term CASE in connection with selling mobile device cases. The following is a non-exhaustive list of such registered and unregistered uses:

7

*Registered Uses*:

- General Displays of High Tech LLC owns a registration for the trademark **CASEMAX** for products including mobile device cases and screen protectors (U.S. Reg. No. 4,612,145; registered on September 30, 2014);

- Casemachine, LLC owns a registration for the trademark **CASEMACHINE** for products including mobile device cases and protective covers (U.S. Reg. No. 4,495,997; registered on March 11, 2014);

- Thule IP owns a registration for the trademark **CASE LOGIC** for products including mobile device cases (U.S. Reg. No. 1,988,078; registered on July 23, 1996);

- Case Taboo LLC owns a registration for the trademark **CASE TABOO & Design** for products including mobile device cases (U.S. Reg. No. 4,950,802; registered on May 3, 2016);

- Caprica Technologies Pte LTD owns a registration for the trademark **CASE-FOUNDRY** for products including mobile device cases (U.S. Reg. No. 4,922,158; registered on March 22, 2016);

- Casenerd LLC owns a registration for the trademark **CASENERD** for products including mobile device cases (U.S. Reg. No. 4,880,843; registered on January 5, 2016);

- Xiamen Yishui Shangpin Trade Co. owns a registration for the trademark **CASECOCO & Design** for products including mobile device cases (U.S. Reg. No. 4,858,014; registered on November 24, 2015);

- Charnis Inc. owns a registration for the trademark **CASE STUDY AMP** for products including mobile device cases (U.S. Reg. No. 4,852,660; registered on November 10, 2015);

- PJA Distribution owns a registration for the trademark **CASEFLEX** for products including mobile device cases (U.S. Reg. No. 4,688,343; registered on February 17, 2015); and

- Caseguru Inc. owns a registration for the trademark **CASEGURU** for products including mobile device cases (U.S. Reg. No. 4,634,282; registered on November 4, 2014).

*Unregistered Uses*:

- Caseology Cerritos sells mobile device cases in connection with the trademark **CASEOLOGY**;

- B2B Partners sells mobile device cases in connection with the trademark **THECASESTUDIO**; and

- Maya Group sells mobile device cases in connection with the trademark **MAKEYOURCASE**.

Printouts evidencing the foregoing registrations and/or uses are attached as Exhibit 5.

29. Because (i) the term CASE in a trademark used for mobile device cases identifies immediately to consumers that the products are cases for mobile devices; and (ii) so many companies use the term CASE in their trademarks to identify their mobile device cases, the term CASE is weak as applied to mobile device cases, and is not entitled to any trademark protection.

30. The trademark CASE-MATE is therefore also descriptive and weak; the mere addition of the term MATE to the second-half (and less-prominent portion) of the trademark does not notably increase the strength or scope of protection.

31. There are also other third parties that use and/or have registered the terms CASE and MATE in their trademarks for products that are unrelated to Defendant's products. For example, RTS Packaging, LLC of Norcross, Georgia owns a federal trademark registration for the exact trademark **CASEMATE** for paperboard box partitions for packaging (U.S. Reg. No. 2,143,454; registered on March 10, 1998). Upon information and belief, RTS Packaging's CASEMATE trademark and Defendant's CASE-MATE trademark have coexisted peacefully for the past decade without any consumer confusion. Printouts evidencing RTS Packaging's registration are attached as Exhibit 6.

32. Defendant has coexisted with these companies that use variations of "case" and "mate" in their names for at least more than a decade, without any suggestion that the similarities in the names cause confusion when used with different products.

33. Upon information and belief, Defendant has not taken any action to enforce its trademark against any other third party's use of CASE in connection with mobile device cases or any arguably similar products.

### Walmart's Use of the CASEMATE Trademark for Stationery Products

34. In 2013, Walmart set out to create a private label brand for its line of products in its stationery department. Walmart's goal was to create an "identity brand" to serve as an overall organizing principle for its line of affordable, quality products in the stationery department. It considered several names, and tested their appeal with consumers.

35. Ultimately, Walmart selected the name CASEMATE for its private label line in the stationery department, for use with pencils, pens, markers, highlighters, poster board, construction paper, sketch pads, notebooks, portfolios, filler paper, legal pads, and binders.

36. The Walmart employees involved in the creation of a private label brand for the company's line of products in the stationery department were not aware of Case-Mate's line of mobile device cases. Nor were they aware of RTS Packaging's line of packaging products that uses the CASEMATE trademark. Nor were they aware of any companies whose use of variations of "case" and "mate" in connection with trademarks for goods could possibly be confused with Walmart's use of CASEMATE in connection with its line of stationery goods.

37. The Walmart employees involved in the effort to create a private label brand for the company's line of products in the stationery department never had any intent to trade off the goodwill of any company that uses any combination of the common words "case" and "mate" in their names. Rather, they intended to create a distinct and independent brand to organize Walmart's line of stationery products.

38. On March 7, 2014, Walmart filed an application to federally register the CASEMATE trademark in connection with a wide variety of products—including stationery products such as pencils, pens, markers, highlighters, poster board, construction paper, sketch pads, notebooks, portfolios, filler paper, legal pads, and binders—as well as other products such as cash registers, clothes pins, wallpaper, and hook and loop tape (App. Ser. No. 86/214,864). Walmart filed its application on an "intent-to-use" basis, because it had not yet begun using the trademark in connection with all of its intended products. A printout evidencing Walmart's application is attached as Exhibit 7.

39. On May 28, 2014, an Examining Attorney from the United States Patent and Trademark Office analyzed Walmart's application and conducted a search of the United States trademark register to determine, among other things, whether Walmart's CASEMATE trademark for stationery and other products is confusingly similar to any other pending or registered trademarks.

40. On May 29, 2014, the Examining Attorney issued a refusal to register Walmart's trademark because the Examining Attorney believed that the trademark was likely to cause confusion with the existing trademark CASEMATE, registered in connection with "box partitions of paperboard for packaging," owned by RTS Packaging, LLC of Norcross, Georgia (U.S. Reg. No. 2,143,454). A printout evidencing the Examining Attorney's refusal (referred to as an "Office Action") is attached as Exhibit 8.

41. Notably, even after conducting his search for trademarks that he believed could be confusingly similar to Walmart's CASEMATE trademark (which, upon information and belief, included Case-Mate's trademark registration for CASE-MATE for use with mobile device cases) the Examining Attorney did not cite the CASE-MATE trademark registration against Walmart's

application. *See id.* In other words, the Examining Attorney did not believe that there was a likelihood of confusion between Walmart's CASEMATE trademark and Defendant's CASE-MATE trademark.

42. In response to the Examining Attorney's refusal, on June 27, 2014, Walmart deleted the portion of its identification of goods in the trademark application that related to file boxes, so that the products listed in Walmart's application no longer overlapped with RTS's products. A printout evidencing Walmart's response to the Office Action is attached as Exhibit 9.

43. On December 16, 2014, the Examining Attorney withdrew his refusal and approved the application for "publication" (a thirty-day period of time during which any third party may object to the registration of a particular trademark). A printout evidencing the Examining Attorney's approval for publication is attached as Exhibit 10.

44. During the week of April 14, 2014, Walmart began selling stationery products in connection with the CASEMATE trademark.

45. Currently, Walmart uses its CASEMATE trademark in connection with various stationery products, including three-ring binders, composition books, legal pads, pens, pencils, paper shredders, and dry erase calendar boards. The products can be as inexpensive as $0.44, with the majority of Walmart's CASEMATE stationery products selling for less than $10.00 each. For example, Walmart sells the CASEMATE-branded stationery products depicted in the images below: highlighters ($4.97 for a 24-pack), spiral notebooks ($4.97 for a 5-pack), gel pens ($5.97 for a 36-pack), paper clips and pushpins ($4.97 for a 970-count container), composition books ($4.97 for a 5-pack), and 2-pocket folders ($5.97 for a 12-pack).



Printouts evidencing Walmart's offering for sale of the foregoing products are attached as Exhibit 11.

46. Walmart does not sell mobile device cases or related accessories in connection with its CASEMATE trademark.

47. Walmart's stationery products are not similar or complementary to Defendant's mobile device cases and accessories.

48. Walmart sells its CASEMATE stationery products in the stationery departments of its Walmart stores; it does not sell its CASEMATE stationery products in the electronics departments of its stores.

49. Walmart's CASEMATE stationery products are inexpensive, functional, and practical, and would not be considered "fashion-forward."

50. Walmart does not directly target fashion-conscious trendsetters as customers for its CASEMATE stationery products.

51. Because Walmart's CASEMATE stationery products are so different from Defendant's CASE-MATE mobile device cases, and because they are sold in completely different departments and are targeted at completely different groups of customers, there is no likelihood of confusion between the parties' respective trademarks (and therefore no infringement of Defendant's trademark).

52. Indeed, Walmart is not aware of any instances of actual consumer confusion between its CASEMATE trademark and Defendant's CASE-MATE trademark that has led to any mistaken purchases over the past two-and-a-half years since Walmart began using the trademark.

### Defendant's Threats to and Actions Taken Against Walmart

53. Despite the fact that, upon information and belief, Defendant has never enforced its CASE-MATE trademark against any other third party using a trademark similar to CASE-MATE in connection with arguably similar products, Defendant decided to attempt to enforce its trademark against Walmart's CASEMATE trademark for products that are completely different from Defendant's products.

54. On April 15, 2015, Defendant filed a Notice of Opposition with the TTAB, alleging that Defendant would be damaged by the issuance of a registration for Walmart's CASEMATE trademark in connection with certain of the products that Walmart included in its application. In particular. Defendant alleged that Walmart's trademark is likely to cause confusion with Defendant's trademark and that Walmart's trademark is likely to dilute the allegedly distinctive quality of Defendant's trademark (Opp. No. 91221514). A printout of Defendant's Notice of Opposition, as well as a printout of Defendant's First Amended Notice of Opposition (filed on July 27, 2016) are attached as Exhibit 12.

55. Walmart filed an Answer to Defendant's Notice of Opposition on August 24, 2015, denying that Defendant would be damaged by registration of Walmart's CASEMATE trademark, and denying that registration was likely to cause confusion with or dilution of Defendant's CASE-MATE trademark. A printout of Walmart's Answer, as well as a printout of Walmart's Answer to Defendant's First Amended Notice of Opposition (filed on August 5, 2016) is attached as Exhibit 13.

56. Fact discovery has been ongoing in the opposition proceeding since September 22, 2015; the parties have exchanged written discovery requests and responses, as well as a significant number of documents, but have not yet taken any depositions.

57. Although the jurisdiction of the TTAB extends only to whether Walmart may register its trademark (i.e., the TTAB does not have the jurisdiction to determine whether Walmart's trademark infringes Defendant's trademark, or whether Defendant is entitled to receive monetary damages from Walmart), it is clear that Defendant's ultimate goal in enforcing its trademark against Walmart is *not* simply to prevent Walmart's trademark from becoming registered. Instead, upon information and belief, Defendant's ultimate goal is to collect a large monetary sum from Walmart in litigation or settlement.

58. In particular, during discussions between the parties, Defendant has demanded that Walmart turn over records regarding all revenue and profits that have resulted from the sale of products bearing the CASEMATE brand. Defendant has also expressly threatened litigation and indicated that it intends to file litigation in federal district court.

59. As a result, there presently exists a justiciable controversy regarding Walmart's right to use the CASEMATE trademark in connection with its stationery products free from any

allegation by Defendant that such conduct constitutes an infringement of Defendant's claimed rights in the CASE-MATE trademark.

## CLAIMS FOR RELIEF

### COUNT I
**(Declaratory Judgment of Non-Infringement)**

60. Walmart repeats and realleges the allegations set forth in paragraphs 1-59 above.

61. This is an action for declaratory judgment and further relief against Defendant pursuant to 28 U.S.C. §§ 2201 and 2202.

62. Defendant has alleged, and Walmart denies, that Walmart's use of the term CASEMATE in connection with its stationery products infringes Defendant's alleged rights in its federally-registered CASE-MATE trademark.

63. Defendant has specifically threatened to file litigation in federal court, and indicated that it intends to file Lanham Act claims.

64. Defendant's threats to file a trademark infringement suit and other allegations of infringement create a reasonable apprehension by Walmart that Defendant will file a lawsuit against Walmart asserting trademark infringement claims under 15 U.S.C. § 1051, *et seq*.

65. There exists an actual and justiciable controversy between Walmart and Defendant as to whether Walmart infringes Defendant's alleged trademark.

66. Because there can be no likelihood of confusion between Walmart's use of the CASEMATE trademark and Defendant's use of the CASE-MATE trademark (indeed, there has been none since Walmart began using the CASEMATE trademark over two years ago), Walmart seeks a declaratory judgment that its use of the CASEMATE trademark in connection with its stationery products does not constitute trademark infringement of Defendant's alleged CASE-MATE trademark.

*****

WHEREFORE, Walmart respectfully requests that this Court enter judgment in its favor and against Defendant:

a. Declaring that Walmart's use of the CASEMATE trademark for stationery products does not infringe, and at all times has not infringed, Defendant's claimed rights in the alleged CASE-MATE trademark;

b. Awarding Walmart its costs and attorneys' fees; and

c. Granting Walmart such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Walmart demands a trial by jury of all claims so triable.

Dated: August 17, 2016

Respectfully submitted,

_____
Clifford W. Plunkett
FRIDAY ELDREDGE & CLERK LLP
3425 North Futrall Drive, Suite 103
Fayetteville, AK 72703-6252
Telephone: (479) 695-2011
Facsimile: (479) 695-2147
Email: plunkett@fridayfirm.com

R. David Hosp (*pro hac vice* forthcoming)
Sheryl Koval Garko (*pro hac vice* forthcoming)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
Email:     hosp@fr.com
           garko@fr.com

        Elizabeth E. Brenckman (*pro hac vice* forthcoming)
        Michael A. Anderson (*pro hac vice* forthcoming)
        FISH & RICHARDSON P.C.
        601 Lexington Avenue, 52nd Floor
        New York, NY 10022
        Telephone:  (212) 765-5070
        Facsimile:  (212) 258-2291
        Email:      brenckman@fr.com
                      maanderson@fr.com

        ATTORNEYS FOR WAL-MART STORES, INC.