IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WAL-MART STORES, INC.**                                                                    **PLAINTIFF/
                                                                                              COUNTER DEFENDANT**

V.                                    CASE NO. 5:16-CV-05215

**CASE-MATE, INC.**                                                                          **DEFENDANT/
                                                                                              COUNTER PLAINTIFF**

### MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff/Counter Defendant Wal-Mart Stores, Inc.'s ("Walmart") Motion to Dismiss (Doc. 33) and Brief in Support (Doc. 34), concerning Counts I and II of Defendant/Counter Plaintiff Case-Mate, Inc.'s ("Case-Mate") Amended Counterclaims. Case-Mate filed a Response in Opposition (Doc. 37) to the Motion, and Walmart filed a Reply (Doc. 39). On January 17, 2017, the Court held a hearing on the Motion, during which both parties presented oral argument. Now that the Motion is ripe for decision, the Court finds it should be **GRANTED IN PART AND DENIED IN PART** for the reasons explained herein.

### I. BACKGROUND

Case-Mate is an American company that sells mobile phone and smartwatch accessories, including phone cases, wallets, wristlets, clutches, screen protectors, computer cases, power cables, and stickers. The company launched in 2006 and maintains that it has invested more than $30 million promoting its brand since that time. Case-Mate currently sells its products at a number of physical locations, including big-box stores, office supply stores, department stores, discount stores, electronics companies,

1

specialty stores, and mall kiosks.  The company also sells online through Case-Mate's website, as well as through Walmart.com, Walmart.ca, Jet.com, Amazon.com, Groupon.com, eBay.com, and others.

In 2006, Case-Mate applied for United States trademark protection for its brand name, "CASE-MATE."  The mark was accepted in 2007 for official registration by the United States Patent and Trademark Office ("PTO") (U.S. Registration 3,246,753).  In 2008, Case-Mate began selling its trademarked products at Walmart stores in the United States and on Walmart.com.  Then in 2012, Case-Mate applied for trademark protection in Canada by petitioning the Canadian Intellectual Property Office to register the "CASE-MATE" mark.  A Canadian trademark was granted in 2013 (No. TMA864357).

In March of 2014, while Walmart was still selling Case-Mate's products in its American stores and online, Walmart filed a trademark-registration application with the PTO for a new line of office and school supply products.  The term Walmart sought to protect was "CASEMATE."  Walmart filed a similar trademark application in Canada in June of 2014.

Sometime in December of 2014, the PTO published notice of Walmart's pending trademark application.  Case-Mate believed that Walmart's proposed CASEMATE mark was confusingly similar to the already-registered CASE-MATE mark, so Case-Mate decided to formally oppose Walmart's petition.  Case-Mate notified the Trademark Trial and Appeal Board ("TTAB") in January of 2015 of its intent to oppose and its request for a three-month period of time to file an opposition brief.  In the meantime, Walmart continued to sell its CASEMATE brand of office products at its physical stores and online at Walmart.com.  Case-Mate ultimately filed its opposition brief before the TTAB in April

of 2015. At around the same time, Walmart began selling Case-Mate's cell phone products at Walmart stores in Canada, as well as on Walmart's Canadian website, Walmart.ca. As of yet, Walmart's Canadian trademark application has not been granted and is still pending final approval.

On August 17, 2016, Walmart filed a Complaint for declaratory judgment of non-infringement in this Court, asserting the following:

> Because there can be no likelihood of confusion between Walmart's use of the CASEMATE trademark[1] and Defendant's use of the CASE-MATE trademark (indeed, there has been none since Walmart began using the CASEMATE trademark over two years ago), Walmart seeks a declaratory judgment that its use of the CASEMATE trademark in connection with its stationery products does not constitute trademark infringement of Defendant's alleged CASE-MATE trademark.

(Doc. 1, p. 16). Walmart also requested that the TTAB suspend its review of the proposed CASEMATE mark in favor of litigating the infringement issue in this Court.

On November 14, 2016, Case-Mate responded to Walmart's Complaint by filing an Answer and Counterclaim (Doc. 18), and on December 1, 2016, Case-Mate filed an Amended Answer and Counterclaim (Doc. 28). Case-Mate has now asserted four separate legal claims against Walmart in this case. Count I of the Amended Counterclaim maintains that Walmart violated the Lanham Act at 15 U.S.C. § 1114, by infringing Case-Mate's validly registered trademark. Count II claims that Walmart violated the Lanham Act at 15 U.S.C. § 1125(a), by using the brand name CASEMATE in a manner "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

---

[1] To clarify, although Walmart may possess some common-law trademark rights, Walmart's application for federal trademark registration was never granted final approval by the PTO, and thus, to the Court's knowledge, Walmart possesses no federal trademark rights in CASEMATE.

association" of Walmart's goods in comparison with Case-Mate's. Both Counts I and II ask the Court to enjoin Walmart's use of the term CASEMATE on goods sold "in the United States, Canada, and elsewhere," and award "damages proven to have been caused by reason of Wal-Mart's aforesaid acts and a disgorgement of Wal-Mart's profits for sales of products under the CASEMATE name." (Doc. 28, pp. 26-27). Case-Mate argues that Walmart's use of CASEMATE in connection with Walmart's office and school supply product line "is causing consumers to associate Case-Mate's CASE-MATE products with low-quality goods." Id. at p. 21. According to the Amended Counterclaim, "Case-Mate has received communications from dissatisfied consumers of Wal-Mart's CASEMATE products in both the United States and Canada who have wrongly attributed quality problems to Case-Mate . . . ." Id.

As for Counts III and IV of the Amended Counterclaim, these will not be substantively addressed in this Order, as they are not the subject of Walmart's Motion to Dismiss and concern only Case-Mate's claims brought under state law, including violations of the Arkansas Deceptive Trade Practices Act, common-law trademark infringement, and unfair competition. The instant Motion seeks dismissal of only those portions of Counts I and II that allege violations of the Lanham Act committed by Walmart outside the United States. Walmart contends that Case-Mate has failed to state a claim that supports the extraterritorial application of the Lanham Act beyond U.S. borders, including in Canada and "elsewhere."

Case-Mate responds that it has met the test for establishing an extraterritorial application of the Lanham Act, in particular with respect to Walmart's use of CASEMATE in Canada. During the motion hearing, Case-Mate's counsel admitted that they "aren't

really certain yet if there are other places in the world where Wal-Mart is selling Casemate products where we may also have rights . . . . But in Canada, it's actually a full throttled issue . . . ." (Doc. 41, p. 16). Case-Mate believes that Walmart's decision to market and sell CASEMATE products in Canada, in violation of Case-Mate's Canadian trademark rights, substantially affects U.S. commerce and weighs in favor of applying U.S. trademark law to enjoin Walmart's activities at home and abroad.

## II. LEGAL STANDARD

In reviewing a motion to dismiss, this Court must accept as true all pleaded factual allegations and construe those factual allegations in a light most favorable to the non-moving party, giving the non-moving party the benefit of every reasonable inference. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the factual allegations pleaded must "raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (internal citations omitted). Moreover, the claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Walmart argues in its Motion to Dismiss that its sales of CASEMATE products in Canada should not be part of this lawsuit. That being said, Walmart acknowledges that the Supreme Court has long recognized the Lanham Act's "broad jurisdictional grant," *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952), which allows a district court, under the appropriate circumstances, "to award relief to an American corporation against acts of

trade-mark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States," *id.* at 281.

In considering the extraterritorial application of the Lanham Act, as the Eighth Circuit's body of law in this area is not robust, the Court turns to a three-part test developed by the Second Circuit in the case of *Vanity Fair Mills, Inc. v. The T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956), *cert. denied*, 352 U.S. 871 (1956). This case, which was decided just a few years after the Supreme Court's landmark opinion in *Steele v. Bulova Watch Company*, carefully tracked the *Bulova* Court's reasoning and discerned that the following factors must be weighed when deciding whether to extend the Lanham Act to reach conduct occurring beyond the borders of the United States: (1) whether the defendant's conduct has a substantial effect on United States commerce; (2) whether the defendant is a United States citizen—as the United States retains considerable power to regulate the conduct of its own citizens in foreign countries; and (3) whether resolving the dispute would not create a conflict with trademark rights already established under foreign law. *Vanity Fair*, 234 F.2d at 642. Of the three factors, the *Vanity Fair* Court announced that, from its reading of *Bulova*, the second and third were the most critical, such that "the absence of one . . . might well be determinative and that the absence of both is certainly fatal." *Id.* at 643 & n.13 (lifting quotations from *Bulova* to demonstrate the "two factors" that were the most important to the Supreme Court's analysis: the American citizenship of the defendant/infringer, and the need to avoid conflict or "interference with the sovereignty of another nation").

The *Vanity Fair* Court, applying its own three-part test, found that the Lanham Act

should not be applied extraterritorially to the alleged infringer in its case. The Second Circuit's decision followed from its finding that the two most critical factors in the extraterritoriality analysis—the second and third—had not been met. First, the Court concluded that the defendant was not a United States citizen, noting that even though "many American citizens are employed in defendant's New York office, . . . it is abundantly clear that these employees do not direct the affairs of the company or in any way control its actions." *Id.* at 643. Instead, the evidence showed that the defendant was managed by Canadian citizens from offices in Canada. *Id.* Second, the defendant—rightly or wrongly—had already been granted a Canadian trademark years prior to the commencement of the litigation, and therefore, "[t]he crucial issue in th[e] case [was] the validity of defendant's Canadian trade-mark registration under Canadian trade-mark law." *Id.* at 646. According to the Second Circuit, the district court correctly refused to apply the Lanham Act extraterritorially to reach the defendant's activities in Canada, as doing so would have required the district court to resolve a conflict involving trademark rights that were established under Canadian law. *Id.* The third factor was therefore crucial to the Court's decision, as it later explained:

> Were this merely a transitory tort action in which disputed facts could be litigated as conveniently here as in Canada, we would think the jurisdiction of the district court should be exercised. But we do not think it the province of United States district courts to determine the validity of trade-marks which officials of foreign countries have seen fit to grant. To do so would be to welcome conflicts with the administrative and judicial officers of the Dominion of Canada. We realize that a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere. But this power should be exercised with great reluctance when it will be difficult to secure compliance with any resulting decree or when the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country.

*Id.* at 648.

The facts in the case at bar are quite different from those in *Vanity Fair*. As for the three-part test, Walmart does not attempt to argue in its briefing that the second and third *Vanity Fair* factors are in dispute. Walmart admits it is a U.S. company, headquartered in Bentonville, Arkansas, and it also admits that there is no actual or potential conflict with foreign law that could complicate this case should the Court extend the extraterritorial jurisdiction of the Lanham Act to reach Walmart's conduct in Canada. The only *Vanity Fair* factor in contention is the first one: whether Walmart's conduct in Canada has had a substantial effect on United States commerce. Walmart's brief in support of its Motion to Dismiss the extraterritorial claims argues that "Case-Mate's Counterclaims are devoid of any factual allegations identifying a nexus between Walmart's foreign use of its CASEMATE trademark and an effect on United States commerce," and therefore, "Case-Mate's allegations do not support the extraterritorial application of the Lanham Act to Walmart's use abroad." (Doc. 34, pp. 5-6).

The Court disagrees with Walmart. A careful reading of the cases cited by both parties in their briefing makes clear that the facts in the case at bar support the extraterritorial application of the Lanham Act. Here, we have a U.S. company—Walmart—that, according to the Amended Counterclaim, has directed from its U.S. headquarters a scheme to infringe upon the established and superior U.S. trademark rights of another U.S. company—Case-Mate. The Counterclaim also alleges that, around the same time that Walmart committed Lanham Act violations in the U.S., Walmart extended the scheme to Canada, and engaged in the same illegal conduct there, despite the fact that Case-Mate had already secured Canadian trademark rights.

According to Walmart, there are limited ways in which Case-Mate could satisfy the first prong of the *Vanity Fair* test and show a substantial effect on U.S. commerce due to Walmart's activities abroad. Walmart suggests that if Case-Mate had evidence of the American public being exposed to "international news stories" describing Walmart's alleged infringement in Canada, this could potentially tie to evidence of "significant harm to the plaintiff's goodwill in the United States," and thus trigger the extraterritorial application of the Lanham Act. (Doc. 34, pp. 5-6, citing *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 971 (9th Cir. 2016)). In the alternative, Case-Mate could perhaps show that "Walmart's CASEMATE products sold in Canada have filtered back into the United States in a manner likely to confuse American consumers." *Id.* at p. 6 (citing *Bulova*, 344 U.S. at 286; *McBee v. Delica Co.*, 417 F.3d 107, 125 (1st Cir. 2005)).

The Court rejects the notion that only the above fact patterns could satisfy the first *Vanity Fair* factor. An excellent case-in-point is *Ocean Garden v. Marktrade Company, Inc.*, 953 F.2d 500 (9th Cir. 1991), where the Ninth Circuit held that the mere fact that a trademark holder and an alleged infringer were both U.S. companies weighed in favor of extending the Lanham Act extraterritorially. *Id.* at 503. The *Ocean Garden* Court was also persuaded that the trademark holder's lost revenue, due to the infringer's activities abroad, was proof of a "monetary injury *in the United States* to [the trademark holder]." *Id.* at 503 (emphasis added). Furthermore, the fact that the infringer allegedly acted with "the explicit purpose of harming a U.S. corporation," meant that "the violation may be said to have importance in U.S. commerce," simply because a *U.S. corporation* was "hurt by the infringement." *Id.* at 504.

Having reviewed the cases cited by the parties in their briefing, it is evident that courts generally decline to extend the Lanham Act's reach *only* in the absence of the second or third *Vanity Fair* factors—that is, when the infringer lacks a business presence in the U.S. and/or when the prospect of adjudicating the infringer's overseas conduct would place a U.S. court in an uncomfortable position vis-à-vis the authority of a foreign tribunal. The Court was unable to locate a single case in which both the second and third *Vanity Fair* factors were established—as they have been here—but the court declined to apply the Lanham Act to the overseas conduct. Common sense dictates that this is because overseas infringement, when directed by a U.S. company from its U.S. headquarters, will *necessarily* have a substantial effect on U.S. commerce when the target is another U.S. company.

A brief summary of the cases cited by the parties bears this conclusion out. The first example is the Fifth Circuit's case of *American Rice, Inc. v. Arkansas Rice Growers Cooperative Association*, 701 F.2d 408 (5th Cir. 1983). In that case, the Court declined to extend the Lanham Act to enjoin sales made by an alleged infringer in Saudi Arabia because "Congress did not intend that the Lanham Act reach 'acts committed by a foreign national in his home country under a presumably valid trademark registration in that country.'" *Id.* at 416 (citing *Vanity Fair*, 234 F.2d at 642). However, the Court also noted that when an infringer "possesses no superior foreign right to use the trademarks in question . . . [and] is an American corporation, '[n]o principle of international law bars the United States from governing the conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations are not infringed. Congress has the

power to prevent unfair trade practices in foreign commerce by citizens of the United States, although some of the acts are done outside the territorial limits.'" *Id.* (quoting *Scotch Whisky Assoc. v. Barton Distilling Co.*, 489 F.2d 809, 812 (7th Cir. 1973)).

A second example is the Second Circuit's opinion in *Atlantic Richfield Co. v. Arco Globus International Co.*, 150 F.3d 189, 193 (2d Cir. 1998). There, the alleged infringer had absolutely no U.S. business presence, and the Court found dispositive the fact that "none of the alleged infringer's American activities materially support[ed] the foreign use of the mark," mainly because the infringing company's decision-making concerning its foreign activities did not, for the most part, "take place on American soil." *Id.*

A third example is the First Circuit's opinion in *McBee v. Delica Co.*, 417 F.3d 107 (1st Cir. 2005). There, the Court refused to extend the Lanham Act extraterritorially, but only because the infringing products at issue were both made and sold exclusively in Japan. Due to the fact that the infringing conduct was confined to Japan, and committed by a Japanese company with no U.S. presence, the Court found that the plaintiff had failed to make a sufficient showing that the infringement had a substantial effect on U.S. commerce.

A final example is the *Bulova* case—the case that first announced when the extraterritorial application of the Lanham Act would be proper. *Bulova* involved counterfeit watches that were sold exclusively in Mexico at the direction of an American citizen. 344 U.S. at 281. In that case, one of the factors motivating the Supreme Court's decision to extend the Lanham Act's reach into Mexico was the fact that the counterfeit products at issue trickled back across the border into the U.S. and caused actual confusion to

American consumers. *Id.* at 286. There were, however, other facts in the case that supported a conclusion that U.S. commerce was substantially affected by the counterfeiter's conduct in Mexico. For example, the counterfeiter in *Bulova* marketed "competing goods [that] could well reflect adversely on Bulova Watch Company's trade reputation in markets *cultivated by advertising here* as well as abroad." *Id.* at 287 (emphasis added). Moreover, the infringer carried out "an unlawful scheme" that was "consummated abroad," but included "essential steps" that were completed in the U.S., *id.*—a scheme similar to the one alleged by Case-Mate in the Amended Counterclaim.

In view of the above discussion, the Court finds that the allegations in the Amended Counterclaim are sufficient to show that Walmart's alleged conduct in Canada justifies the extraterritorial application of the Lanham Act. All three *Vanity Fair* factors have been met here, and in particular, Case-Mate's Amended Counterclaim, when taken as true, ties Walmart's activities in Canada to a substantial effect on U.S. commerce. For these reasons, the Motion to Dismiss is **DENIED** as to acts of infringement and/or consumer confusion in Canada.

As to the Amended Counterclaim's references to Walmart's alleged infringement "elsewhere," such allegations fail to meet the specificity standards of *Twombly* and *Iqbal*, as they do not sufficiently put Walmart on notice as to the nature and extent of these other foreign claims, nor do they provide a sufficient basis for the Court to assess whether the Lanham Act may properly be applied extraterritorially. Therefore, the Court **GRANTS** the Motion to Dismiss as to Case-Mate's claims of infringement arising "elsewhere" than the U.S. or Canada.

## IV. CONCLUSION

For the reasons explained herein, Walmart's Motion to Dismiss (Doc. 33) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** with respect to Case-Mate's Lanham Act claims arising from Walmart's alleged activities in Canada. The Motion is **GRANTED** with respect to Case-Mate's claims arising from Walmart's alleged activities "elsewhere," as those claims were not pleaded with the requisite degree of specificity, and are therefore dismissed without prejudice.

**IT IS SO ORDERED** on this 25th day of January, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE